IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OLIVER ODDMAN, | ) | CASE NO. 1:07CV1508 |
| | ) | |
| | ) | JUDGE ECONOMUS |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | REPORT AND RECOMMENDATION |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the magistrate judge pursuant to local rule. The issue before the court is whether the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for social security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the magistrate judge recommends that the decision of the Commissioner be affirmed.

I.

Plaintiff, Oliver Oddman ("Oddman"), filed an application for disability benefits on

September 5, 2003, alleging an onset date of March 1, 2003. Plaintiff asserted disability due to a seizure disorder. After plaintiff's application for disability was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff was represented by counsel and waived his own appearance. A medical expert and vocational expert testified.

On September 13, 2005 the ALJ issued a finding of no disability. The ALJ found that plaintiff has impairments of epilepsy and borderline intellectual functioning but concluded that he does not have an impairment or combination of impairments equal to one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (1992). The ALJ further concluded that plaintiff retains the residual functional capacity to perform the exertional requirements of work but imposed the following non-exertional limitations: simple one or two-step tasks; no climbing ladders, ropes, or scaffolds; and no hazards in the workplace, including unprotected heights, uneven terrain, or dangerous machinery.

The ALJ concluded that plaintiff had no acquired work skills. Based on the testimony of the vocational expert, the ALJ determined that there exists in the national economy a number of jobs plaintiff can perform. Thus, he concluded, plaintiff is not disabled.

Plaintiff requested review by the Appeals Council. The Appeals Council refused to review the determination, and the ALJ's finding became that of the Commissioner. On appeal plaintiff raises two issues: The ALJ erred in concluding that his impairments do not meet or equal 12.05(C) of the listings; and the ALJ erred in concluding that he can perform substantial gainful employment.

II.

Oddman was 20 years old at the time of the hearing. He dropped out of school in the

10th grade and has no past relevant work experience. He lived with his grandmother. His daily activities consisted of taking a bath with supervision, helping in the apartment, having lunch and dinner, reading, and watching television.

The relevant medical evidence of record is as follows. Michael Leach, Ph.D. examined Oddman in October 2003 for the state agency. Plaintiff stated that he was applying for benefits because of learning problems that prevented him from working on a regular basis. He reported spending every summer in Jamaica visiting his brother and sister. He attended regular education classes until he dropped out of school after the 10th grade. Oddman reported having had grand mal seizures beginning at the age of 10; his latest seizures were in June and August 2003. Oddman achieved a verbal IQ of 69, performance IQ of 76, and overall IQ of 70 on the WAIS-III. He achieved a 5th grade reading equivalent. Plaintiff did not demonstrate any evidence of significant memory deficits or deficits in attention/concentration or persistence. He was functioning within the borderline range of intelligence. Dr. Leach concluded that plaintiff would "experience difficulty working at this time secondary to his borderline intellectual functioning." He "is viewed able to work in some entry-level positions, except as restricted by his continued seizure activity." Plaintiff "may require additional instruction and supervision to perform even simple tasks adequately, but with direction and encouragement he would be able to function in a simple work setting." Dr. Leach assigned a GAF of 71.

Richard Watts, M.D. testified as a medical advisor at the hearing that plaintiff's borderline intelligence did not meet or equal listing 12.05. Dr. Watts noted that plaintiff had worked at a nursery for some months and thus it did not appear that his activities of daily living were affected. He opined that plaintiff could perform simple, repetitive tasks.

In April 2003 plaintiff was admitted to the hospital with a seizure. His last seizure had been three years prior. Oddman was given additional Dilantin and discharged. In August 2003 he had another seizure while in Jamaica. The physician notes suggest that plaintiff had not been taking his medication when he suffered the seizure.[1]

In September 2003 Oddman was seen at the Cleveland Clinic by Beate Diehl, M.D. Physician notes indicate that plaintiff had his first seizure when age 10. More recently he had a total of three in 1996, one in 1998, and one in 1999. He was then seizure free for three years but experienced a seizure in June[2] and August 2003. Sleep deprivation was noted as a trigger for the seizures. All past MRIs and EEGs had been normal. The diagnosis was epilepsy, generalized motor seizure. In July 2004 Dr. Diehl reported that plaintiff experienced a seizure on March 3. He had been non-compliant with his Dilantin. Plaintiff continued to see Dr. Diehl until May 2005, making regular visits for follow up on his condition. In January 2005 plaintiff had complained of headaches and was taking Tylenol twice a week. At that time he was going to a vocational guidance program in electronics. Plaintiff was feeling fine. In May Dr. Diehl discussed with plaintiff no bathing or swimming unsupervised, no use of heavy machinery, no use of sharp moving objects, and avoidance of heights. He was continued on Dilantin. Thus there is no evidence of plaintiff having had a seizure from March 2004 to the date of the hearing. On November 25, 2005 plaintiff was admitted to Pocono Medical Center after a seizure. Plaintiff had missed several doses of Dilantin during the week. He was treated and released.

---

[1] Plaintiff later reported to the Cleveland Clinic that he had missed two doses of Dilantin while in Jamaica.

[2] April is probably the correct month.

4

Dr. Watts testified at the hearing that plaintiff's medical condition did not meet or equal listing 11.02. Plaintiff was not having seizures at a rate of one per month and hence did not meet the requirement of that listing.

### III.

A claimant is entitled to receive supplemental security benefits under the Social Security Act when he establishes disability within the meaning of the Act. 42 U.S.C. §1382c(a)(1); 20 C.F.R. §416.905 (1992); *Kirk v. Secretary of Health and Human Servs.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §416.905 (1992).

This court's review is limited to a determination of whether on the record as a whole the Commissioner's decision is supported by substantial evidence. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978). "Substantial evidence" is more than a scintilla of evidence but less than a preponderance of evidence. It is evidence which a reasonable person would accept as adequate support for a proposition. *Richardson v. Perales*, 402 U.S. 389 (1971). If the decision is supported by substantial evidence, the Commissioner's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff argues first that the ALJ erred in failing to find his impairments meet or equal listing 12.05. Specifically plaintiff argues that the ALJ erred by stating plaintiff did not have a diagnosis of mental retardation and did not have a lifelong history of problems with adaptive

5

behavior.

The relevant portion of 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.00 reads as follows:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. . . . For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, *i.e.*, is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work.

"Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . ." Section 12.05.

The court agrees with plaintiff that § 12.05 does not require a formal diagnosis of mental retardation. There is nothing in the language of that provision indicating such a requirement. As the Commissioner points out, however, the ALJ did not specifically require such a diagnosis. The ALJ merely stated that no such diagnosis had been made.

Listing 12.05(C) requires the following showing: 1) "significantly subaverage general intellectual function with deficits in adaptive functioning initially manifested during the developmental period;" 2) "a valid verbal, performance, or full scale IQ of 60 through 70;" and 3) "a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05(C); *West v. Commissioner of Soc. Sec.*,

6

2007 WL 1991059 (6th Cir., filed July 5, 2007). Accepting the evidence that plaintiff exhibited a full scale IQ of 70, the court notes that he was never diagnosed as mentally retarded but, instead, like the plaintiff in *West*, was consistently diagnosed with borderline intelligence. Moreover, Dr. Leach opined that while plaintiff would "experience difficulty working at this time secondary to his borderline intellectual functioning, he was " viewed able to work in some entry-level positions, except as restricted by his continued seizure activity."[3] Dr. Watts agreed with this assessment.

Plaintiff helped his grandmother at home, read, watched television, and cared for personal needs. He spent every summer in Jamaica. He worked at a nursery. These activities, and the manner in which he interacted with Dr. Leach during his examination, indicate that he does not have deficits in adaptive functioning at the level required by 12.05(C).

Finally, in order to prevail plaintiff must show that he has a mental or physical impairment imposing additional and significant work-related limitation of function. No physician, including Dr. Diehl, opined that plaintiff's seizures prevented him from working. Drs. Leach and Watts opined that plaintiff could not perform certain kinds of work involving certain activities. The ALJ incorporated those limitations into the hypothetical posed to the vocational expert.

IV.

For the above stated reasons the magistrate judge finds there is substantial evidence

---

[3] Dr. Leach added that plaintiff "may require additional instruction and supervision to perform even simple tasks adequately, but with direction and encouragement he would be able to function in a simple work setting." The ALJ did not accept this opinion and instead relied on the reviewing state physicians and Dr. Watts. He was not obligated to accept Dr. Leach's opinion because Dr. Leach was not a treating physician.

7

to support the decision of the Commissioner and recommends that the decision be affirmed.

Dated: November 16, 2007     s:\Patricia A. Hemann
                             Patricia A. Hemann
                             United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).